FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 20, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>TONY J. BOLEN (1); and CASEY ALLEN GREER (2),<br><br>　　　　　　Defendants. | No. 2:23-CR-74-MKD-1, -2<br><br>ORDER DENYING TEONA MACGREGOR'S MOTION TO QUASH TRIAL SUBPOENA<br><br>**ECF No. 155** |

　　On December 11 and December 12, 2024, the Court took testimony and heard argument on Teona MacGregor's Motion to Quash Trial Subpoena. ECF No. 155. Defendant Tony J. Bolen (1) appeared in custody and was represented by Zachary Ayers and Michael Merritt. Defendant Casey Allen Greer (2) appeared in custody and was represented by Brooke Hagara. AUSAs Ann Wick and Laurel Holland represented the United States. David Partovi represented Teona MacGregor.

　　This Order memorializes and supplements the Court's oral ruling denying the motion.

ORDER – 1

## LEGAL STANDARD

The spousal testimonial privilege "prohibits one spouse from testifying against the other in criminal cases during the course of their marriage, and 'the witness-spouse alone has a privilege to refuse to testify adversely.'" *United States v. Fomichev*, 899 F.3d 766, 771 (9th Cir. 2018), *opinion amended on denial of reh'g,* 909 F.3d 1078 (9th Cir. 2018) (quoting *Trammel v. United States*, 445 U.S. 40, 53 (1980)). "[T]he privilege is not favored, and in consequence is narrowly construed." *In Matter of Grand Jury Subpoena of Ford*, 1985 WL 178, at *1 (S.D.N.Y. Jan. 9, 1985).

"The Ninth Circuit recognizes a sham marriage exception to the marital privilege of not having to testify against a spouse." *In re Grand Jury Proc. (84-5)*, 777 F.2d 508, 509 (9th Cir. 1985) (per curiam) (citing *United States v. Saniti*, 604 F.2d 603, 604 (9th Cir. 1979) (per curiam), *cert. denied. sub nom., Saniti v. United States*, 444 U.S. 969 (1979)). This exception is a "narrow" one "that has typically arisen when there has been a close temporal proximity between the date of a marriage and the date when a witness-spouse has been expected to testify." *Fomichev*, 899 F.3d at 771 (citation omitted).

While the "timing of a marriage will always be a factor," it is "only one of the factors." *In re Grand Jury Proc. (84-5)*, 777 F.2d at 509. Other factors include whether "the marriage was entered into in good faith" and whether the spouses

ORDER – 2

"plan to continue their marital relationship." *Id*.; *accord Santini*, 604 F.2d at 604 (when a "marriage is not entered into in good faith," it "could not be used to invoke the privilege") (citations omitted); *see also United States v. Apodaca*, 522 F.2d 568, 571 (10th Cir. 1975) (holding that privilege may not be asserted "because it is based upon a fraudulent, spurious marriage that was not entered into in good faith") (citation omitted); *Appeal of Malfitano*, 633 F.2d 276, 279 (3d Cir. 1980) (noting courts should "inquire into whether the marriage is valid and not some sham or fraud"). *Santini* endorsed the view that the spousal testimonial privilege is not available when "the purpose of the marriage was for the purpose of invoking the marital privilege." 602 F.2d at 604 & n.1.

## DISCUSSION

A. Relevant Timeline

Defendant Greer and MacGregor began dating in July 2015 and quickly moved in together because MacGregor had been homeless. Defendant Greer was arrested and detained on state charges, which form the basis for these federal charges, on January 15, 2022. MacGregor was interviewed by law enforcement

ORDER – 3

shortly after Defendant Greer's arrest and made several incriminating statements about him.[1]

On January 22, 2022, in a recorded jail phone call, Defendant Greer told MacGregor she needed to eat in order to keep up her strength because she is "going to be working [herself] to the bone" to get him "out"; she responded by inquiring how much a marriage license costs. USA-00005695; *see* ECF No. 170.[2] While the state case was pending, Defendant Greer and MacGregor repeatedly discussed the need to get married, the need for the prosecutor to be informed of the marriage, and the urgency for the marriage to occur. For example, on April 2, 2022, Defendant Greer, believing he received confirmation that they can marry, stated "the sooner [it occurs] the better." USA-00005698. On April 5, 2022, which

---

[1] The Court was not aware of the substance of these statements at the time it orally denied MacGregor's motion. However, MacGregor subsequently testified that she provided law enforcement photos of Defendant Greer's penis and identified Defendant Greer's penis in the photos of alleged child pornography.

[2] When referencing recorded jail calls in this Order, the Court cites to the audio files' Bates numbers. The United States submitted, as a non-scannable exhibit, digital copies of these call recordings. *See* ECF No. 170.

ORDER – 4

appears to be the day a pretrial conference was held in his state case, ECF No. 165 at 5, Defendant Greer and MacGregor engaged in the following conversation:

> Defendant Greer: I was calling to let you know I just got the response from the marriage coordinator and of course the prosecutor denied it, claiming you were a state's witness. I have to wait for the paperwork from the law library so that I can resubmit the application. . . . I can resubmit it stating you cannot be a state's witness.
>
> MacGregor: Okay and then she will have no choice but to let us get married?
>
> Defendant Greer: Yeah, pretty much. . . . I might have to talk to my attorney about it first.
>
> MacGregor: Why would you have to talk to your attorney about it?
>
> Defendant Greer: So that he can inform the prosecutor.

USA-00005684.

Defendant Greer and MacGregor married, over a recorded jail call, on May 8, 2022. USA-00005689. His state trial was scheduled to begin June 13, 2022. ECF No. 165 at 5.

B. Analysis

MacGregor moved to quash the trial subpoena on the ground of the spousal testimonial privilege. The United States opposed the motion, arguing the marriage was a sham marriage because it was entered into for the purpose of invoking

ORDER – 5

marital privilege to preclude MacGregor from testifying against Defendant Greer. Because the United States did not seek to elicit communications that occurred after the marriage, the Court had no occasion to assess, and did not invalidate, the privilege as to marital communications.

As discussed below, and as stated on the record, the Court finds the couple's May 8, 2022, marriage was designed for the purpose of MacGregor avoiding having to testify and Defendant Greer had no other intent to marry MacGregor. The Court reaches this conclusion based on (1) the timing of the efforts to marry, the date of the marriage, and the preoccupation of the individuals involved with getting married and ensuring the state prosecutor was advised of the marriage; (2) an assessment of text messages Defendant Greer exchanged with Defendant Bolen and other individuals; (3) a review of jail calls made between Defendant Greer and MacGregor; and (4) an evaluation of MacGregor's testimony.

*1. Timing of the Marriage*

On the surface, the timing of the marriage is inherently suspect. After roughly six-and-a-half years together,[3] Defendant Greer and MacGregor engaged

---

[3] In a call recorded a few weeks before trial commenced, Defendant Greer seemingly coached MacGregor about when their relationship started. USA-00005690. MacGregor recalled telling her attorney they started dating on August

ORDER – 6

in an effort to marry and eventually married only after Defendant Greer's arrest on January 15, 2022, and after MacGregor made incriminating statements about Defendant Greer to law enforcement.[4]  Following Defendant Greer's arrest, recorded jail calls indicate Defendant Greer's apparent newfound preoccupation with getting married and MacGregor's apparent desperation to mitigate the potential legal damage of incriminating statements she made about Defendant Greer to law enforcement.  Seven days after his arrest, Defendant Greer told MacGregor she needs to keep up her strength because of how hard she will have to work to get him out of custody.  She responded by asking how much a marriage

---

9, 2017.  Defendant Greer adamantly insisted they had been together since July 1, 2015, and expressed frustration that MacGregor gave a different date.  MacGregor slowly repeats "July 1, 2015," as if writing the date down.  MacGregor testified as to the version he demanded—that their relationship began July 1, 2015.  Although the date is not particularly relevant to the Court's consideration of the underlying issue, the fact that Defendant Greer was influencing and coaching MacGregor as to her testimony casts doubt on the accuracy of other testimony she provided to the Court and is further indicative of Defendant Greer's intent.

[4] Notably, MacGregor did not testify as to any demonstrated intent to marry prior to Defendant Greer's arrest.

ORDER – 7

license costs.  USA-00005695.  While the timing of the marriage is "only one" of the factors the Court must assess, *In re Grand Jury Proc. (84-5)*, 777 F.2d at 509, the totality of the evidence, as discussed below, strongly weighs in favor of finding the marriage was designed for the purpose of MacGregor avoiding having to testify.

  *2. Text Messages prior to Defendant Greer's Arrest*

  The Court has reviewed dozens of text messages Defendant Greer exchanged with Defendant Bolen and others beginning in October 2020 and continuing until the time of Defendant Greer's arrest.  The messages strongly suggest Defendant Greer never possessed an intent to marry MacGregor prior to his arrest.  Rather, these exchanges portray his and MacGregor's relationship as both unstable and in distress in the months leading up to his arrest.

  The Court has reviewed messages exchanged between Defendant Greer and Defendant Bolen, with whom Defendant Greer apparently confided about MacGregor.  The messages are reflective of dissatisfaction with the existing relationship.  *See, e.g.*, USA Trial Ex. 12 at 12-016-018 (discussing moving in together if Defendant Bolen gets a "big enough house," because Defendant Greer wants to "get away" from MacGregor); *id.* at 12-063 (Defendant Greer explaining he could not respond to Defendant Bolen's invitation to play video games because MacGregor was watching his every move, angering him); *id.* at 12-097-12-099

ORDER – 8

(Defendant Greer expressing displeasure that MacGregor was home for the week and that he could not play video games because she was home, referring to her as lazy and crazy); *id*. (the exhibit contains exchanges repeatedly and frequently expressing annoyance that Defendant Greer cannot play video games with Defendant Bolen because MacGregor was home).

The Court also considered messages Defendant Greer exchanged with two other individuals, which reflect a deep hostility to MacGregor. On September 3, 2021, Defendant Greer texted Ashley S. and Natasha H. about MacGregor: "As soon as we pulled away from you guys, she started bitching at me … and didn't stop until a few minutes ago." ECF No. 173 at 5. Ashley remarked in response: "I'm sorry Casey. If I had a spare room, I would let u stay here [sad emoji]. I feel so bad for you, no wonder you sit in the bathroom for 2 hours." *Id.* at 6. Defendant Greer agreed, stating: "Yeah. I need my alone time from her and she even ruins that!" *Id*. Ashley repeated the earlier sentiment: "I wish u could stay here dude." *Id*. Defendant Greer again agreed, replying, "Same." *Id*. Ashley later referred to MacGregor as a "little psycho," to which Defendant Greer responded, "Only a little! Try a lottle!" *Id*. Ashley replied, "Haha crazy psycho." *Id*. Defendant Greer again agreed, replying, "Definitely!" *Id*. Ashley then remarked, "That's your future wife your talking about." *Id*. Defendant Greer responded, "NO FUCKING WAY IN HELL!!!!" *Id*.

ORDER – 9

On September 7, 2021, Defendant Greer again texted Ashley and Natasha about MacGregor: "I don't know who she's talking to but she's making me out to be the bad guy again, I went off on her because she wouldn't stop with her bullshit from the second I stepped in the door tonight." *Id*. Ashley remarked that she "couldn't believe [he] called her a spoiled brat." *Id*. Defendant Greer clarified "[t]hat's not all I called her": "Spoiled brat. Whiney little baby. Bit[c]h. I think there was more but I can't remember. She doesn't remember me calling her a bitch. … She's e[x]pecting me to apologize but it's not going to happen." *Id*. Ashley responded: "Nothing to apologize for speaking your truth." *Id*. Defendant Greer agreed: "Exactly." *Id*. Defendant Greer also referred to MacGregor as a "[s]tupid fucking cunt." *Id*. at 8. Finally, while discussing that MacGregor was "looking at apartments," Defendant Greer noted that "if [MacGregor] moves, I can't go with her, making me homeless." *Id*. at 9. The references cited are merely examples of dozens of messages containing the same tone of discontent, and which never reflect any positive commentary about MacGregor.

The Court recognizes that ebbs and flows are ordinarily a natural part of relationships. Accordingly, the Court does not—and would not—base its finding on an up-and-down dynamic between Defendant Greer and MacGregor. *Cf. United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir. 1985) ("We do not believe that courts can or should 'assess the social worthiness of particular marriages or the

ORDER – 10

need of particular marriages for the protection of the privilege.'") (quoting *Appeal of Malfitano*, 633 F.2d at 279); *United States v. Ingersoll*, 2015 WL 5968750, at *1 (E.D. Mich. Oct. 14, 2015) ("The testimonial privilege applies with equal force to challenged marriages as it does to model marriages."). The Court likewise does not assess whether, after nearly two-and-a-half years, Defendant Greer and MacGregor's marriage is a "challenged" or "model" one. Rather, it finds only that, based in part on the text messages referenced above, Defendant Greer did not have a bona fide intention to marry MacGregor prior to his arrest. Looking only to Defendant Greer's motive, the messages in the record plainly suggest that "the purpose of the marriage was for the purpose of invoking the marital privilege." *See Saniti*, 602 F.2d at 604 & n.1.

    *3. Jail Calls*

The Court has reviewed a series of recorded jail calls made between Defendant Greer and MacGregor occurring after his arrest on state charges related to the conduct underlying the subsequent federal charges. *See* ECF No. 168 at 2-5 (describing calls). The Court finds the jail calls reflect Defendant Greer entered into the marriage to avoid having MacGregor testify.

As noted above, after Defendant Greer advised McGregor that she needed to keep up her strength because she was going to have to work hard to keep Defendant Greer out of prison, she inquired as to the cost of a marriage license.

ORDER – 11

USA-00005695.  This conversation occurred six-and-a-half years after the couple started dating yet exactly one week after Defendant Greer's arrest.

Later, on April 2, 2022, Defendant Greer expressed a desire to marry as expeditiously as possible.  USA-00005698.  On that same call, MacGregor questioned the professional competence of the state prosecutor, apparently because the state prosecutor had not objected to their marriage in sufficient time.  *Id.*  Defendant Greer and MacGregor married over a record jail call on May 8, 2022.  USA-00005689.  Shortly after the marriage ceremony, Defendant Greer seemingly expressed confusion that MacGregor was in possession of the marriage certificate; he stated to MacGregor that he understood the officiant would be taking the marriage certificate to the courthouse.  *Id.*  Defendant Greer later remarked that "today is really going to piss off the prosecutor."  USA-00005693.

In later calls, the two frequently mention the marriage and marriage certificate while discussing Defendant Greer's prosecution.  *See* USA-00005686 (discussing how long it will take for the prosecutor to learn they are married and the filing of a motion to preclude MacGregor's testimony); USA-00005692 (same).

The calls reflect that, to Defendant Greer, the marriage was inexorably linked with his prosecution: Defendant Greer repeatedly was preoccupied with

ORDER – 12

making sure the state prosecutor was aware of it.[5]  As with the text messages, the calls plainly suggest that "the purpose of the marriage was for the purpose of invoking the marital privilege."  *See Saniti*, 602 F.2d at 604 & n.1.

---

[5] Defendant Greer's preoccupation with the assertion of marital privilege was manifest in the run-up to trial in this matter, suggesting that—notwithstanding the two-and-a-half-year duration of the marriage—Defendant Greer's intention of avoiding MacGregor from having to testify continued to be paramount.  For example, on November 4, 2024, Defendant Greer and MacGregor engaged in heated conversation concerning marital privilege, wherein Defendant Greer yelled at MacGregor and demanded that she assert the privilege.  *See* USA-00005683 (MacGregor: "She told me that when it's a subpoena, you have to do it or else." Defendant Greer: "No you don't, she's lying.  No you don't.  Because once you invoke marital privilege, they cannot force you to testify.  Period." MacGregor: "Well, she set me up for Thursday at four o'clock for a pretrial interview to ask me some questions and everything else." Defendant Greer: "No, that's crap.  No." MacGregor: "Because she says that's to determine whether I am a witness or not." Defendant Greer: "It doesn't matter.  It's a trap.  Because just like how they were trying to get you to identify me through certain penis pics, they're going to try and use whatever you say against me in that interview.  So, no.  You tell them you're

ORDER – 13

*4. MacGregor's Testimony*

The Court finds MacGregor's testimony decidedly not credible. She repeatedly invoked equivocal phrases—such as variations of "I do not recall" and "I do not remember"—at least ten times on cross-examination.[6] In the Court's view, it was implausible for MacGregor not to remember details and conversations that were unambiguously memorable, based on the content of her calls with Defendant Greer. Perhaps most egregiously, MacGregor stated she could not remember Defendant Greer directing her not to speak with law enforcement.

---

going to have to call them back or something and tell them no, you're invoking marital privilege. You do not have to testify."). Defendant Greer's comments and tone during this call reflect that, two-and-a-half-years after their marriage, the issue of marital privilege was still central and important to him. The Court discerns Defendant Greer's intention remained the same: to avoid having MacGregor testify.

[6] For example, MacGregor could not recall or did not remember discussing with Defendant Greer whether the state prosecutor knew that they were married; the timing of the filing of the marriage certificate; whether the filing of the marriage certificate would get conveyed to the state prosecutor; and why she sought to distance herself from statements she made to law enforcement.

ORDER – 14

However, Defendant Greer made this remark to MacGregor in at least two recorded jail calls in November 2024—less than one month prior to MacGregor's testimony.  USA-00005683; USA-00005682.  During these calls, Defendant Greer sounded adamant, spoke forcefully, and expressed anger.[7] Given the nature and tone of these calls, the Court finds it impossible for MacGregor not to remember them.

The Court thus gives no weight to vast majority of MacGregor's testimony, apart from MacGregor's assertion that she sought to distance herself from the statements she made to law enforcement.  The Court does not credit, among other things, that she had neither discussed nor been concerned about the state prosecutor's knowledge of her marriage; that she had not discussed the timing of the filing of the marriage certificate; that she could not recall identifying Defendant

---

[7] Notably, on November 7, 2024, Defendant Greer and MacGregor seemingly argued about whether MacGregor had initiated a call with law enforcement after Defendant Greer's arrest.  USA-00005682 (Defendant Greer: "[My attorney] says that you went to them first, you're the one that called them and went to go talk to them.  And that's what they're going to use." MacGregor: "I did not fucking call them, they called fucking me."  Defendant Greer: "Well that's what my attorney had said, that you contacted them." MacGregor: "No.  No. …").

ORDER – 15

Greer in pictures to law enforcement; and that she could not remember discussing her statements to law enforcement with Defendant Greer.

## CONCLUSION

The Court does not take lightly the task of assessing whether a marriage was entered into in good faith or for the purpose of wielding it as a shield in a criminal prosecution. However, the totality of the evidence compels the conclusion that Defendant Greer and MacGregor's marriage was "for the purpose of using the marriage ceremony in a scheme to defraud[.]" *Lutwak v. United States*, 344 U.S. 604, 614 (1953). The Court thus denies MacGregor's motion.

Accordingly, **IT IS HEREBY ORDERED:**

1. Teona MacGregor's Motion to Quash Trial Subpoena, **ECF No. 155**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to counsel.

DATED December 20, 2024.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE